UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JEAN ETIENNE and CRYSTAL ETIENNE, for
themselves and on behalf of their son S.S. a minor,

                    **DOCKET NO.: CV-25-724**
                    **(NJC)(SIL)**

               Plaintiffs,

    -against-
                    **FIRST AMENDED**
                    **COMPLAINT**

LOCUST VALLEY HIGH SCHOOL,
LOCUST VALLEY CENTRAL SCHOOL DISTRICT,
DANIELLE TURNER in her individual and official capacity,
KRISTEN TURNOW in her individual and official capacity,
in his individual and offical capacity, KIMBERLY GOTTI     *JURY TRIAL DEMANDED*
and GIANNA GOTTI,

              Defendants.
------------------------------------------------------------------X

      PLAINTIFFS, JEAN ETIENNE, father and CRYSTAL ETIENNE, mother as Plaintiffs, for

themselves, and on behalf of their minor son, S.S., by and through their attorneys, The Law Offices

of Frederick K. Brewington, state and allege the following as for their First Amended Complaint

pursuant to grant of Court by Order dated June 5, 2025:

## PRELIMINARY STATEMENT

      1.     This is a civil action seeking compensatory relief, equitable remedies and all other

relief this Court deems just and proper in response to the actions of Defendants LOCUST VALLEY

HIGH SCHOOL, LOCUST VALLEY CENTRAL SCHOOL DISTRICT ("The District"),

DANIELLE TURNER in her individual and official capacity, KRISTEN TURNOW in her

individual and official capacity, KIMBERLY GOTTI, and GIANNA GOTTI ("The Gottis").

      2.     This action seeks to obtain equitable remedies, injunctive relief, compensatory

damages and punitive damages for harm caused by and all the Defendants, including The District's

reckless, intentional, wanton and purposeful, failure to supervise, failure to discipline, and failure

to properly intervene into the harassment and attack of Plaintiffs and their son, as well as the repeated failures to remedy, and put an end to prior and subsequent racist behaviors and actions on the part of school body and staff which violated the civil rights of Plaintiffs and their son. Further, the actions of The Gottis violated Plaintiffs rights in that they verbally abused and then physically assaulted, the Plaintiffs (Etienne family) and created an atmosphere of hate, violence and racial animus that accompanied the verbal and physical assault of Plaintiffs.

3. Specifically Plaintiffs' allege that LOCUST VALLEY HIGH SCHOOL, LOCUST VALLEY CENTRAL SCHOOL DISTRICT ("The District"), DANIELLE TURNER in her individual and official capacity, KRISTEN TURNOW in her individual and official capacity, KIMBERLY GOTTI, and GIANNA GOTTI ("The Gottis"), to scream obscenities and racial epithets at Jean Etienne's son during a school sanctioned athletic event, and furthermore, allowed and created an atmosphere which allowed and encouraged both GOTTI women to assault and seriously injure Mrs. Etienne and her son.

4. These actions by collective DEFENDANTS resulted in physical injury and emotional distress for the Plaintiffs as the attack on Plaintiffs was vicious, public and witness by many of those persons who where in attendance. Further, it was recorded and disseminated through social media. As a result of same, this action seeks to obtain equitable remedies, recover damages, and other relief for collective DEFENDANTS violation of Plaintiffs' civil rights codified within the Constitution of the United States under 42 U.S.C.§1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth and the Fourteenth Amendments, the New York State Human Rights Law (Executive Law), the New York State Civil Rights Law and other state laws.

5.     Moreover, Defendants LOCUST VALLEY HIGH SCHOOL, LOCUST VALLEY CENTRAL SCHOOL DISTRICT ("The District"), DANIELLE TURNER in her individual and official capacity, KRISTEN TURNOW in her individual and official capacity, acting *in locos parentis* are responsible for the actions, of their students, spectators and staff at the sporting events which they host, sponsor and hold within their facilities and are obligated to intervene in and prevent actions taken by their students, spectators and staff and failed to intervene and supervise the outrageous, discriminatory, vile, racist and physical assault upon CRYSTAL ETIENNE, JEAN ETIENNE and S.S. as victims.

6.     The refusal to protect Plaintiffs from the physical and verbal assaults that occurred on February 8, 2024 as well as the subsequent harassment, abuse, assault, battery and vile discriminatory treatment on the part of KIMBERLY GOTTI and GIANNA GOTTI was additionally negligent, intentional and violative.

7.     As a result of collective DEFENDANTS actions Plaintiffs have suffered and continue to suffer.

## JURISDICTION AND VENUE

8.     The Jurisdiction of this Court is founded upon 28 U.S.C §§1331 and 1343.

9.      Plaintiff further requests the pendent jurisdiction of this Court be exercised pursuant to U.S.C.A. §1367, to hear and decide any and all claims arising under state law.

10.     This court is requested to exercise pendent jurisdiction over Plaintiff's NYSHRL, New York Civil Rights Law and other State Law claims pursuant to 28 U.S.C. §1367 because they arise from as common nucleus of operative facts with the federal claims and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States

Constitution.

11.     Venue is appropriate in the Eastern District of New York, as the entity defendants,

LOCUST VALLEY HIGH SCHOOL, LOCUST VALLEY CENTRAL SCHOOL DISTRICT ("The

District"), DANIELLE TURNER in her individual and official capacity, KRISTEN TURNOW in

her individual and official capacity, and the Plaintiffs in question are located in Nassau County, New

York. Upon information and belief the other Defendants, KIMBERLY GOTTI and GIANNA

GOTTI, also reside in the Eastern District of New York and the situs of the incident giving rise to

these claims occurred in the Eastern District of New York.

12.     That prior hereto Plaintiff in conjunction with his State claims filed a Notice of

Claim in compliance with General Municipal Law Section 50 et. seq. The original Complaint in this

action was timely filed on February 7, 2025.

13.     That more than 30 days have elapsed and Defendants have failed and refused to pay

or adjust same.

## **PARTIES**

14.     JEAN ETIENNE is the father of S.E, and resides in Upper Brookville, New York,

County of Nassau.

15.     CRYSTAL ETIENNE, is the mother of S.S. and resides in Upper Brookville, New

York, County of Nassau.

16.     S.S. is the child of CRYSTAL and JEAN ETIENNE, who at all times relevant herein

was a minor. S.S. resides in Upper Brookville, New York, County of Nassau.

17.     At all times relevant, defendant LOCUST VALLEY HIGH SCHOOL is a public

school and part of a municipal entity and public school district of the United States, and is located

at 99 Horse Hollow Rd, Locust Valley, NY 11560, County of Nassau, State of New York. Locust Valley High School serves the communities of Locust Valley, Matinecock, Lattingtown, Bayville, Muttontown, Upper Brookville and parts of Mill Neck. The school is part of the Locust Valley Central School District, which encompasses and serves the previously stated villages and unincorporated towns.

18. Defendant LOCUST VALLEY CENTRAL SCHOOL DISTRICT is a municipal entity and public school district of the United States, has been a resident of Locust Valley, New York, County of Nassau. As of the 2022-2023 school year, there were 1,912 students enrolled in the district. Of those 1,912 students, 985 (52%) were males, 912 (48%) were females, and 1 (0%) identified as non-binary. The racial makeup of the students in the district during the 2022-2023 school year was 70% White (1,334 students), 23% Hispanic/Latino (432 students), 5% Asian or Asian Pacific Islander (91 students), 1% Black or African American (28 students), 1% Multiracial (13 students).

19. Defendant Danielle Turner (hereinafter "Turner") is the Director of Health, Physical Education & Athletics at LOCUST VALLEY CENTRAL SCHOOL DISTRICT and is charged with acting as a role model of professionalism in the physical education, health, and athletic environment. Support the philosophy, policies, and goals of the schools. Ensure the health, safety, and welfare of all students. Adhere to all policies and procedures as outlines in the Parent/Student Handbook, Employee Handbook, Section VIII, NYSPHSAA rules/regulations/guidelines and District Policies. Develop, organize, supervise, and evaluate the school's physical education, health, and athletic programs. Supervise qualified coaching staff for all athletic programs, ensuring that they are performing their duties at the highest level of professionalism.

5

20.     Defendant Turner is and all times in this Complaint, was a white female, sued here in her official and individual capacity, was at the time of February 8, 2024 and all relevant times thereafter an employee of the Defendant District, and at all relevant times, was a decision maker and policy maker for and employed to serve as such by and for the LOCUST VALLEY CENTRAL SCHOOL DISTRICT . Defendant Turner was a state actor prior to and on February 8, 2024, and continued to be so thereafter.

21.     Defendant Kristen Turnow, Ed.D. (hereinafter "Turnow") is the Superintendent of Schools at LOCUST VALLEY CENTRAL SCHOOL DISTRICT and is the chief administrative officer for the District. She is responsible for the effective operation of the District; for the general administration of all instructional, business or other operations of the District; and for advising and making recommendations to the Board of Education with respect to such activities. Defendant Turnow is responsible and required to perform all the duties and accept all of the responsibilities usually required of a Superintendent as prescribed by the Education Laws of New York State, the rules and regulations of the Board of Regents and Commissioner of Education, laws and regulations of the United States, statutes of New York State, and the policies, rules, and regulations established by the Board of Education.

22.     Defendant Turnow is and all times in this Complaint, was a white female, sued here in her official and individual capacity, was at the time of February 8, 2024 and all relevant times thereafter an employee of the Defendant District, and at all relevant times, was a head decision maker and policy maker for and employed to serve as such by and for the LOCUST VALLEY CENTRAL SCHOOL DISTRICT . Defendant Turnow was a state actor prior to and on February 8, 2024, and continued to be so thereafter.

23.     Defendant KIMBERLY GOTTI, (hereinafter "KIM" or "KIMBERLY"), is domiciled in Oyster Bay, New York, County of Nassau.

24.     Defendant GIANNA GOTTI, (hereinafter "GIANNA"), is domiciled in Oyster Bay, New York, County of Nassau.

## FACTUAL ALLEGATIONS

25.     On February 8, 2024 during a post season athletic competition involving the boys highschool basketball teams from Locust Valley and Oyster Bay High schools respectively, a large disturbance occurred.

26.     While waiting for her son to come out on the court Crystal Jean noticed Gianna and Kimberly Gotti yelling "shut up" and getting in some of the faces of some other children in the stands.

27.     This aggressive behavior had gone on for the better part of the entire game without any intervention by, direction from, or warnings from District officials, supervisors, staff or SECTION VIII officials, in response to or in regards to the actions, statements or behavior of the GOTTIS.

28.     Notably, administrators at the game had removed the children whom the GOTTI's had assaulted verbally but had allowed the GOTTI'S to remain and harass those left in the gymnasium.

29.     During the game, the children on the sidelines started yelling for Crystal Etienne's son to be put in the game. However, the yelling had a odd tone as it did not seem genuinely based on the urging to the coach to allow S.S. to play.

30.     As one of the students in the stands pointed out, there was something about the chanting of the students which felt "racist."

31.     Eventually S.S. was placed in the game.  When Crystal Etienne's son did come out onto the basketball court, Defendants, GIANNA GOTTI and her mother KIMBERLY GOTTI, began to verbally abuse Crystal Ettienne's son, S.S.

32.     This included Defendants, GIANNA GOTTI and KIMBERLY GOTTI, yelling out derogatory names, including but not limited to "fucking faggot," "fucking monkey," "fucking bitch", "fuck your mother" and "pussy."  This occurred while Defendants Gotti were present in the bleachers inside the gymnasium allegedly spectating for the opposing team, which was Oyster Bay High School boys basketball team.

33.     "Fucking monkey"[1] was the first thing that Plaintiffs heard come out of Defendant,

---

[1] Historically, monkey has long been used as a racial slur against Black people. In the late 18th century, we find evidence of white people using monkey to denigrate Black people, among other groups of people. Even before Darwin published On the Origin of Species in the mid-1800s, some white people tried to formally classify Black people as just above primates on the evolutionary chain and used simian-based insults to justify heinous oppression.
*porch monkey Meaning & Origin | Slang by Dictionary.com*
*Dictionary.com*
*https://www.dictionary.com › slang › porch-monkey*

"In our nation's past, African-Americans have been referred to as, and treated like, subhumans and regarded as intellectually and culturally inferior.  In perpetuation of this historic racial prejudice, African Americans have been, and sometimes still are, referred to as 'beasts,' 'gorillas,' 'apes,' or 'monkeys.'  *See, e.g., Webb v. Worldwide Flight Serv., Inc.*, 407 F.3d 1192, 1193 (11th Cir. 2005) (plaintiff called 'nigger' and 'monkey,' among other things); *White*, 375 F.3d at 297-98 (plaintiff called, among other things, 'nigger,' 'porch monkey,' and 'Mighty Joe Young'); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 182-83 (4th Cir. 2001) (plaintiff called 'monkey,' 'dumb monkey,' and 'nigger'); *Richardson v. N.Y.S. Dep't of Corr. Serv*., 180 F.3d 426, 439 (2d Cir. 1999) (African American employees called 'apes' or 'baboons'); *Oates v. Discovery Zone*, 116 F.3d 1161, 1175 (7th Cir. 1997) (Wood, J., concurring & dissenting in part) (picture of ape with plaintiff's name printed next to it posted for one week); *Jeffries v. Metro-Mark, Inc*., 45 F.3d 258, 260 (8th Cir. 1995) (plaintiff called a "monkey"); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906,

KIMBERLY GOTTI'S mouth when S.S. stepped onto the Court.

34.     Ms. Etienne first looked for assistance from and intervention by supervisors, administrators, staff or officials from Locust Valley allowing the opportunity to and hoping that they would intervene and respond to what was obviously improper, clearly racist and abusive behavior of an adult in the presence of and towards students, particularly her son.

35.     Defendant Turner was present administration at the basketball game and oversaw the supervision of game and behavior of persons in the gymnasium, including but not limited to spectators from both schools.

36.     The wrongful actions have a historical base within the Locust Valley School as same have been ongoing for a period of time, however ,the most recent acts include but are not limited to occurrences at the Locust Valley High School, which are related here in this Complaint.  As in this incident,  which took place as at 99 Horse Hollow Road, Locust Valley, New York, 11560, on February 08, 2024, the actions and inactions of Turner, Turnow, Locust Valley and their personnel, their spectators, their students, their employees, their agents, their charges, their decision makers and their administrators allowed the wrongful and dangerous environment conditions to exist and

910 (7th Cir. 1991) (African American workers called 'nigger,' 'porch monkeys,' 'baboons,' and other epithets in Italian); *Canady v. John Morrell & Co.*, 247 F. Supp. 2d 1107, 1110 (N.D. Iowa 2003) (plaintiff called 'nigger' and 'monkey,' among other things); *Harris v. State*, 46 So. 91, 93 (Miss. 1950) (describing African American defendant as a 'big, black gorilla'); *cf. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 67 (2d Cir. 2000) (plaintiff called 'black sheep,' among other things); *Taylor v.Metzger*, 706 A.2d 685 (N.J. 1998) (plaintiff called 'jungle bunny').'' *LINDA GREEN v. FRANKLIN NATIONAL BANK OF MINNEAPOLIS*,ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA, Civil Action No. 03-6188 (DSD/SRN) (**BRIEF OF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS AMICUS CURIAE ON BEHALF OF APPELLANT LINDA GREEN IN SUPPORT OF REVERSAL)--UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT No. 05-2513**

continue.

37.     Despite the fact that the supervisory personnel from Locust Valley were present and witnessed these improper and heinous actions no intervention took place to curtail, prevent, correct, oversee or bring an end to this behavior until the Ms. Etienne addressed this behavior asking Defendants Gotti to stop.

38.     Defendants Turner, Turnow and District, who were and are responsible for oversight of all interscholastic athletic events at the Locust Valley High School failed to take any preemptive acts or any form of intervention to prevent or stop or curtail the ongoing abuse and acts of intimidating, threatening, demeaning and disrespecting the Black Plaintiffs, including S.S., who was a student at Locust Valley High School which they knew or should have known, was based on race and color. Defendants Turner and the District and their officials failed to take any action to control the situation which took place, or intervene to prevent the harm that was visited on Plaintiffs. Further, Turner, Turnow, the District and their employees, agents, supervisors, administrators, officials, and others who were present and heard, witnessed and learned that the actions, language, threats, abuses were aimed at and directed to Locust Valley students and spectators, including Plaintiffs. Each of their employees, agents, supervisors, administrators, officials, and others of the District failed to take prompt and appropriate action to address the numerous clear violations of its rules, policies and procedures and the laws addressing acts harassment, assault, battery, abusive language, racial and color discrimination and creating a dangerous environment for those present including students.

39.     When no response or intervention occurred, Ms. Etienne, deeply bothered by Defendants behavior towards the students and her child,  addressed the women, responding in sum

and substance, "Please do not call my son. Please do not. They're just kids."

40.     In a fit of race fueled rage, the Gottis, along with unknown cohorts came to the area of the bleachers where Plaintiff Crystal Etienne was standing and physically assaulted both Etienne's and then their child S.S.  Defendants Gotti hit, punched, scratched and ripped out Ms. Etienne's hair in front of students, faculty, school supervisors, school security guards, Turner,  officials and agents. Upon information and belief, no actions have been taken to address this level of abuse and complete lack of "sportspersonship" other than the suspension of students from the premise. Needless to say, each of these comments and acts to which the Plaintiffs were subjected were discriminatory, race based, demeaning and degrading and intended to intimidate and dehumanize the Plaintiffs.

41.     With three minutes and fifty nine seconds remaining in the game, and the score being Locust Valley 72 and Oyster Bay 47,  Plaintiff  noticed KIMBERLY GOTTI coming towards her. The image below  shows the time on the game clock, the location of the officials and the stands on the far side of the photo where Plaintiff was attacked.



42.     Ms. Etienne was brutally physically assaulted by Defendants, GIANNA GOTTI and KIMBERLY GOTTI in front of students, staff, faculty, referees, administration and agents. Crystal felt her hair being pulled, a wig that was secured by three clips and Velcro began to be yanked at, causing a serious head injury.

43.     A 52 second video of the attack on Ms. Etienne, from which the photo above is taken, shows the criminal and assault actions of GIANNA GOTTI and KIMBERLY GOTTI. As she was being physically assaulted by Kimberly and Gianna Gotti, Gianna is said to have encouraged the "rip[ping of] her hair off," as well as having claimed, "I'm 25 and me and my mother already snatched your shit off."

44.     During this attack no fewer than five members of the Oyster Bay basketball team ran across the gymnasium floor to engage in the attack. When Ms. Etienne's son tried to help her, he too was physically assaulted by spectators at the game.

45.     The same occurred when Mr. Etienne attempted to intervene to prevent the further assault of his wife and his son.

46.     As the Locust Valley defendants failed to take appropriate and timely action, it eventually took police intervention to stop the attack.

47.     While on or about February 9, 2024 Kimberly Gotti, 55, and her daughter Gianna Gotti, 25, both of Oyster Bay Cove, were charged in Nassau District Court with third-degree assault, the charges were eventually dismissed on or about October 1, 2024. It was reported that the Court stated at a proceeding, "I have concluded that the case should be dismissed due to violations of discovery requirements." The dismissal had nothing to do with the merits of the underlying criminal charges.

48.     The results of the attack which was allowed to occur by Defendants from the District led to serious harm physically and emotionally to Plaintiffs.   Included in the act of violence perpetrated on Plaintiffs included the actual pulling and ripping out of Ms. Etienne's hair from their roots.  The image below depicts part of the aftermath of the violent assault to which Ms. Etienne was subjected.



49.     While this behavior by spectators and people in the bleachers was happening, onlookers to these improper and heinous acts included supervisory personnel, administration, referees, and other agents and employees from Defendants Turner, Turnow and District.

50.     All personnel from Defendants, District did not act to help Plaintiffs in any fashion before being brutally beaten and attacked.

51.     Further, repercussions against Kimberly and Gianna Gotti have not been taken by the Turner, Turnow or District to address and prevent the level of abuse and utter lack of sportspersonship that occurred toward the Etienne family that day among those other participants.

52.     The racial comments and actions of spectators and people in the bleachers endured by Plaintiffs were racist, demeaning, degrading, and intended to dehumanize the Etienne family as Black persons.

53.     Notably, this was not a one-off incident, as racist and degrading behavior has been a staple in the Locust Valley Community for a long period of time.

54.     Additionally, the Etienne's have been victims of the District ignoring, tolerating and perpetuating racist behavior and ideology in the past.

55.     First, their son's coach although admitting that their son was a good player and should start in games, did not allow their son to play except for ending three games in the season, a fact known by Defendant Turner.

56.     Additionally, students and instructors have repeatedly voiced, and utilized electronic devices to utter racial words, including but not limited to, the "n" word being played in classes.

57.     Moreover, S.S., was targeted by his own teachers and classmates with racial epithets, stereotypes and biases.

58.     For example S.S. was excluded from classes for unknown reasons by his teachers, which frequently feeds into the false and pervasive narrative that S.S. was frequently in possession of, and high on, Marijuana.

14

59.     Adding further insult to real and apparent injury, S.S. has been without his or his parents consent, searched while at LOCUST VALLEY HIGH SCHOOL.

60.     With regard to the rumor of Marijuana, searches were conducted, and no evidence as to the possession or usage of Marijuana was ever found.

61.     At the time of conducting searches of S.S. the school also had no warrant and no probable cause.

62.     Defendant, DISTRICT, had made no attempt to protect Plaintiff from harmful stereotyping by teachers or his peers.

63.     In or about November 2023, S.S. was the victim of having a bottle thrown at him by a female student (who was white) who also attempted to kick S.S. When S.S. attempted to protect himself and move the female student away from him, he was told that he would be suspended and no action was taken against the female student.

64.     When Plaintiffs learned what had occurred and that there was a video of the incident, they insisted on being shown the video. That request was initially denied and upon their continued insistence was finally shown the video, which revealed that S.S. was protecting himself.

65.     Plaintiffs learned that the father of the female student came up to the school to confront S.S. and Plaintiffs were denied the name of that man, thus preventing Plaintiffs from knowing who, if anyone they needed to look out for to be safe.

66.     When Plaintiffs advocated for S.S. in a meeting with Defendant Turnow, they were confronted with accusatory and insulting bias and race based claims.

67.     Not only was the father of the female student that came to the school to do harm to S.S. shielded by Turnow, but during the meeting she made comments about and to the Plaintiffs that

were both insulting and inappropriately race based.

68. Defendant Turnow attempted to convince that her actions of blaming S.S. rather than evaluating the facts and the video and disciplining the female student were not race based by saying, "I have Black people in my family!" and when discussing the actions of S.S. in protecting himself said to Plaintiffs words to the effect of "Would your husband beat you like that!?"

69. This comment caused great injury to Plaintiffs and led Ms. Etienne to respond to ask the frank and direct question, "Who the fuck do you think you are" speaking to us that way?

70. Plaintiffs continued to be mistreated and then insisted that the police be called to evaluate this matter. When Nassau County police arrived they viewed the video and then had the Plaintiffs step out of the room. Thereafter, S.S. was suspended and the appeal of that action was not honored and the suspension was upheld despite the evidence.

71. These events served as a clear indication that Plaintiffs, including S.S. would not and could not be expected to be treated fairly on account of them being Black persons.

72. As a result of the racially charged verbal and physical incident(s) that occurred in the Gymnasium of LOCUST VALLEY HIGH SCHOOL, to which Turner, employees and agents of the DISTRICT failed to respond, Plaintiffs suffered mental anguish, mental pain, psychological trauma, physical pain, and loss of self worth.

73. Moreover, as a result of the pattern of discrimination that has occurred against Plaintiff's son (S.E), the Etienne family has been harmed beyond to a great degree.

74. The wrongful actions that occurred at the game on February 8, 2024 have been ongoing for a period of time and the Etienne's have been harmed throughout the entirety of the inaction regarding their suffering.

16

75.     Through the actions and inactions of the DISTRICT and SECTION VIII their personnel, their spectators, their students, their employees, their agents, their charges, their decision makers and their administrators the Etienne family continues to suffer today.

### AS AND FOR COUNT ONE
### AGAINST DEFENDANTS TURNER, TURNOW AND
### LOCUST VALLEY CENTRAL SCHOOL DISTRICT (THE DISTRICT DEFENDANTS)
### 14TH AMENDMENT-42 U.S.C. § 1983

76.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 75 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

77.     Defendants Turner, Turnow and, failed to address Plaintiffs' complaints of discriminatory, violent, degrading and racist treatment by individuals on their premises in attendance at games held at their school.

78.     All relevant actions taken by Defendant Turner and those with delegated authority to act on their behalf were acting under color of law.

79.     Defendants Turner, Turnow and DISTRICT (The District Defendants), were required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to provide reasonable safety and care of students in their control and custody, including but not limited to Plaintiffs.

80.     While attending a basketball game at Defendants school, S.S. son was threatened, intimidated and accosted with phrases such as, "Fucking monkey"; "Fucking bitch"; "Fuck your mother"; and "Pussy". Additionally, Plaintiffs were attacked viciously by two of the defendants, and plaintiffs were injured, at which time, one of the defendants could be heard saying, "I'm 25 and me and my mother already snatched your shit off."

17

81.     Although aware of the discriminatory treatment of Plaintiffs, Defendants Turner, Turnow and DISTRICT failed to take appropriate action against the individuals who acted in such a virulent manor and engaged in actions which were driven by racial animus in violation of Plaintiffs' rights protected under the Fourteenth Amendment.

82.     At all times relevant to the claims in this matter Defendants Turner, Turnow and DISTRICT as state actors, had a duty to protect not only Plaintiffs, but everyone on the premises, and failed to provide a safe environment for the students present as required by law.

83.     Said acts and failures by Turner, Turnow, and District were motivated by race and were marked by the overt statements and actions Defendants to support the motivation. Turner, Turnow, and DISTRICT allowed these events to happen and even in the face of the wrongful acts failed to take actions that would address the known failures that they knew or should have know were taking place, thereby fostering the wrongful actions which were planned and did occur.

84.     The Plaintiffs did not, in any way provoke or instigate such an attack, and did not create any threat of harm to any of the defendants, who acted in concert to bring about the violations of the rights of Plaintiffs.     Defendants were acting intentionally and with indifference to the harm and injury which would be caused to Plaintiffs.

85.     As a direct and proximate cause of the aforesaid defendants' actions, agreements, abusive treatment and refusal to intervene or take an action to prevent the actions taken against Plaintiffs, Plaintiffs did suffer serious embarrassment, intimidation, emotional injuries, psychological distress, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

86.     Further, the allegations of drug possession, unauthorized and unwelcome searches of Plaintiff S.S. constituted unreasonable violations of Plaintiff S.S.'s Fourth Amendment Rights.

87.     As a result Plaintiffs have suffered irreparable and ongoing injury.

88.     That by reason of the foregoing, PLAINTIFFS suffered and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT TWO
## 1983 "MONELL" AGAINST THE DISTRICT DEFENDANTS

89.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 88 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

90.     DefendantsTurner, Turnow and  DISTRICT have engaged in a pattern practice and policy of discrimination against students of color. Defendants Turnow and Turner were policy makers and decision makers and fostered an ongoing pattern, practice, custom and usage of racial animus, contempt and mistreatment of Black students, parents and in particular the Plaintiffs.

91.     All relevant actions taken by Defendants and those with delegated authority to act on their behalf were taken under color of law.

92.     Defendants have engaged in an intentional and systematic policy, pattern, and practice against Plaintiffs, in violation of the Equal Protection Clause through their unwillingness and failure to address Plaintiffs' pleas against the distressing and openly vile racism spouted by not only individuals on their premises such as the GOTTI 's but by students and teachers during school hours. Such behavior includes:

> (a)     Adopting the abusive, vocative, discriminatory and race based actions of their students spectators, staff and allowing and creating an culture and atmosphere that had and was known to have a disparate and disproportionate impact on Plaintiffs

which was on the basis of race and color; and

(b)        And failing to follow their on rules and regulations to prevent, address and combat those racist and discriminatory actions, statements and conspiracies which were aimed at and intended to harm Plaintiffs on the basis of race and color.

( c)        Failing to train supervisors, monitors, security personnel and inadequately supervised their employees, servants, agents, contractors, officers, professionals and administrators and other officials and failed to prevent and adequately respond to the use of abusive, harmful, discriminatory, hateful language, actions and threats, failed to provide the necessary resources, support and training for prevention and responses to any such actions.

(d)        Permitted, tolerated and encouraged a pattern and practice of inadequate supervision, training and prevention of abuse and mistreatment by their respective employees, agents, servant, professionals, administrators, officers, spectators and others as to persons in their immediate sphere of oversight and influence, including but not limited to visiting spectators who engage in abusive, harmful, discriminatory, hateful language, actions and threats against persons of color, including but not limited to Plaintiffs who are Black.

(e)        Failed to properly train, supervise, instruct, discipline, and assure that the inappropriate, abusive, unauthorized, abusive, harmful, discriminatory, hateful language, actions and threats and/or negligent actions of their respective employees, agents, servant, professionals, administrators, officers and others (including failure to follow rules and regulations, adhere to standards and obligation, and properly document incidents with accurate reports) was properly addressed constituted deliberate indifference to the rights, safety, and dignities secured by persons of color, including the Plaintiffs.

93.        As a direct and proximate cause of the aforesaid Defendants' actions, agreements, abusive treatment and violent behavior, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

94.        As a result of the foregoing, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

95. That by reason of the foregoing, PLAINTIFFS suffered and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT THREE
## 1983: FAILURE TO SUPERVISE AGAINST THE DISTRICT DEFENDANTS

96. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 95 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

97. Defendants, Turner, Turnow, District and their agents and employees, failed to adequately supervise the attendees/spectators of the basketball game.

98. Defendants failed to closely supervise attendees and ensure that their attendees were acting reasonably or with the sportsmanship like behavior expected at a highschool game.

99. Additionally, supervisory employees failed to supervise other employees and enforce any rules or regulations regarding a duty to act to protect students.

100. As a result of the foregoing, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

101. That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT FOUR
## 1983: FAILURE TO INTERVENE

102.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 101 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

103.     Defendants, Turner, District and their agents and employees failed to intervene in an appropriate, reasonable or timely manner into the verbal assault of Plaintiffs' son and/or the physical attack of Plaintiffs or their son.

104.     Defendants, Turner, District and their agents and employees, did have numerous opportunities to intervene to prevent the eventual assault and abuses suffered by Plaintiffs and chose not to.

105.     As a result of the foregoing, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

106.     That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT FIVE
## 42 U.S.C. § 1981 AGAINST THE GOTTI DEFENDANTS

107.     Plaintiffs repeat, reiterates, and reallege each and every allegation contained in Paragraphs 1 through 106 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

108. Part of the post-Civil War Civil Rights Act of 1866, 42 U.S.C. §1981 was initially passed to provide newly freed slaves and their descendants with the right to make and enforce contracts. 42 U.S.C. § 1981 (Pub. L. 102–166, title I, § 101, Nov. 21, 1991, 105 Stat. 1071) states:

(a)Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)"Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

109. Defendants, GIANNA GOTTI and KIMBERLY GOTTI while attending a highschool basketball game, with the intent to cause harm, prevent Plaintiffs from the full and equal benefits of attending the sporting event, verbally abused and then physically assaulted, the Etienne family and allowed the verbal and physical assault of Plaintiff's to continue, all of which was accompanied by insults and language that were race based. Clearly, the Gottis subjected plaintiff to harassment and other mistreatment and treated them differently from the other white persons present.

110. The use of racially charged language such as "monkey" which was aimed directly toward Plaintiff S.S. marked their intent and purpose to focus on and identify Plaintiff S.S. by and through the use of racial charged names. All such conduct was racially motivated and intended to deprive him and his parents from being safe in the Locust Valley High School gymnasium, being free

of verbal and physical abuse, being "protected against impairment by nongovernmental discrimination and impairment" and "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens".

111.    The actions taken by both of the GOTTIS were an intentional and completely unprovoked attack which stemmed from their racial animus and prejudices.  The acts of abuse and discrimination would not have happened "but for" the race of Plaintiffs.

112.    By failing to act Defendants, Turner, Turnow and District, aided and abetted the racially motivated behavior of the GOTTI's.

113.    As a result of the foregoing Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

114.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR COUNT SIX**
**4TH AMENDMENT: WARRANTLESS NON-CONSENSUAL SEARCH OF MINOR**
**CHILD BY THE DISTRICT DEFENDANTS**

115.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 114 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

116.    Defendants, Turner and Turnow allowed and their agents in the District, did physically search S.S. without a warrant or consent from the child or the parent.

117.    Additionally, Turner and Turnow and their agents Defendant District, did not have probable cause to conduct a search of Plaintiff S.S.

118.    Further, Turnow and her agents Defendant District did not have the requisite training, knowledge or experience to assess a situation to conduct a lawful search.

119.    Defendants, Turner, Turnow, District and their agents and employees had no authority to conduct a search of the minor child in question and did so in violation of his rights under the Fourth Amendment.

120.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR COUNT SEVEN**
**NEGLIGENCE AGAINST THE DISTRICT DEFENDANTS**

121.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in Paragraphs 1 through 120 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

122.    Defendants Turner, Turnow and District acting *in locos parentis* had a special duty to care for S.S.

123.    Defendants Turner, Turnow and District breached that duty when they failed to protect S.S. and to protect his bodily integrity and freedom from being subjected to unwarranted abuse and violence including but not limited to hate language, threats, intimidation and racial assaults and any and all in school racially motivated attacks.

124.     As a result of same, Defendants Turner, Turnow and District was the actual and proximate cause of the ongoing verbal assault that occurred, and the unlawful searches that occurred while S.S. was in their care and custody.

125.     As a result of the aforesaid defendants' actions, agreements, abusive treatment and violent behavior, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

126.     That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT EIGHT
## 42 U.S.C. §1985 AGAINST THE GOTTI DEFENDANTS

127.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 1 through 126 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

128.     Section 1985 provides in relevant part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... if one or more persons ... do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages ....
42 U.S.C. § 1985(3).

129.     In violation of 42 U.S.C. § 1985(3) the Gotti Defendants conspired with each other for the purpose of depriving Plaintiffs the equal protection of the laws or of equal privileges and immunities under the laws. They further act in furtherance of the conspiracy by referencing the infant Plaintiff S.S. using a racially derogatory phrase and then engaged in violence against Plaintiffs after uttering the abusive racial charged language. There after the Gottis cause harm and injury to the bodies and minds of the Plaintiffs all in their agreed effort to deprive the Plaintiffs of their rights and/or privilege to which they were entitled.

130.     The defendants, GIANNA GOTTI and KIMBERLY GOTTI, visited unwanted, offensive and harmful abuse and race based actions including physical violence against Plaintiffs and did so through agreements between themselves and others present at the time of their abuse and assault and did so with the knowledge of the District and their administrators and supervisors and allowed same to occur knowing that was intended to cause harm to Plaintiffs, and was done because and on account of the race of Plaintiffs.

131.     Upon information and belief the actions taken by GIANNA GOTTI and KIMBERLY GOTTI at Locust Valley High School, including cursing, verbal abuse, referring to S.S. as a "fucking monkey" and the use of other racially charged language was coordinated by and between GIANNA GOTTI and KIMBERLY GOTTI and allowed by Turner, Turnow and the District.

132.     Defendants GIANNA GOTTI and KIMBERLY GOTTI did use race based language and other derogatory names while agreeing to and then carrying out actions demonstrating hatred, disrespect and disregard for Plaintiffs. Said acts were motivated by race and were marked by the overt statements and actions Defendants to support the motivation. Turner, Turnow and DISTRICT, aided, abetted and agreed to allow this to happen and even in the face of the wrongful acts that were

taking place and failed to take actions that would address the known conspiracy that was taking place, thereby fostering the wrongful actions which were planned and did occur.

133.    The Plaintiffs did not in any way provoke or instigate such an attack, and did not create any threat of harm to the defendants, who acted in concert and conspiracy to commit this violation of the rights of Plaintiffs.    Defendants were acting intentionally and with indifference to the harm and injury which would be cause to Plaintiffs.

134.    As a direct and proximate cause  of the aforesaid defendants' actions, agreements, abusive treatment and conspiracy Plaintiffs did suffer serious embarrassment, intimidation, emotional injuries, psychological distress, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

135.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT NINE
## AGAINST ALL DEFENDANTS
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

136.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 1 through 135 of this Amended  Complaint, inclusive, with the same full force and effect as if fully set forth herein.

137.    The Defendants Turner, Turnow, DISTRICT, GIANNA GOTTI and KIMBERLY GOTTI should have known that their conduct of (I) failing to protect the Plaintiffs from racial attacks (ii) refusing to take disciplinary action after being informed that Plaintiffs were subjected to verbal

28

racial slurs, and assaulted, (iii) taking no measures to protect the Plaintiffs from further attacks, and (iv) failing to address the racial motivation that was apparent in the aforesaid "assault," constituted extreme and outrageous conduct, beyond the bounds of decency within a civilized society.

138.    The Defendants Tuner, Turnow, DISTRICT, GIANNA GOTTI and KIMBERLY GOTTI knew or should have known that their conduct would cause extreme emotional distress to the Plaintiffs, yet, Defendants continued with their course of conduct, and failed to remedy the extreme emotional distress that they knew and/or should have known was being visited upon the Plaintiffs.

139.    As a result of the aforesaid outrageous conduct by the Defendants, the Plaintiffs, and each individually, and collectively suffered extreme emotional distress, psychological injuries, and physical symptoms, pain and suffering, resulting from the emotional distress that they endured at the hands of the defendants.

140.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### AS AND FOR COUNT TEN
### Violations under New York State Civil Rights Law § 40
### (As against All Defendants Individually and Collectively)

141.    The Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 140 of this Amended Complaint with the same force and effect as though fully set forth herein.

142.     Upon the filing of this complaint a copy is being provided to the office of NYS Attorney General with a request for that office to take action against Defendant.

143.     The New York State Civil Rights Law § 40-c which outlaws discriminatory practices in places of public accommodation, states in relevant part:

1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

144.     On February 8, 2024 during a basketball game at Locust Valley High School between Locust Valley High School Boys Basketball Team and Oyster Bay High School Boys Basketball Team, GIANNA GOTTI and KIMBERLY GOTTI engaged in inappropriate, harassing, assaultive and race based actions toward Plaintiffs  GIANNA GOTTI and KIMBERLY GOTTI along with other who joined in verbally abused children inside the gymnasium of Locust Valley High School.

145.     While this behavior by GIANNA GOTTI and KIMBERLY GOTTI engaged in improper and heinous acts, which was done with the knowledge of Defendants District and SECTION VIII included administrative, officials and supervisory personnel from the DISTRICT and SECTION VIII, none of whom took any steps or actions to intervene until staff police were called and Plaintiffs insisted that something be done.   Only then, was something done, but not by Defendants.

146.     To the contrary, with the exception of the expulsion of certain students from the premises who were the ones being abused, repercussions have not been taken to address and prevent

this level of abuse and complete lack of "sportspersonship" by GIANNA GOTTI and KIMBERLY GOTTI.

147. The racial comments and actions of GIANNA GOTTI and KIMBERLY GOTTI while in the bleachers, including those aimed at Plaintiffs where endured without any action to address their actions which were clearly race based, demeaning, degrading, and intended to intimidate and dehumanize the Plaintiffs.

148. Not only were the actions and comments aimed at Plaintiff disregarded, but the level of intentional disrespect., intimidating, making comments intending to demean Plaintiffs on account of their race and color and otherwise physically creating fear of danger all of which was directed toward Plaintiffs because of their race and color was open and obvious.

149. Defendants knew Plaintiffs' race and color and were aware or should have been aware of Plaintiff's intent to enter into fully participation in all aspects of the activities at the premises controlled by Defendants and to receive the equal, fair and non-discriminatory treatment and be treated equally and provided equal opportunity as Caucasian persons.

150. Plaintiffs were denied full benefits of the law and rights to which they were entitled and equal accommodations, advantages, facilities and privileges as provided by Defendants to others other then Plaintiffs.

151. As a consequence of Defendants' wrongful actions, callous indifference, negligent behavior and violation of state and federal laws, Plaintiffs were intimidated, abused harassed, assaulted and prevented from receiving equal accommodations as provided to Caucasian persons and was prevented from engaging in transactions and business on equal terms as Caucasian persons. Instead Plaintiffs were subjected to abuse, threats, mental anguish, great fear, embarrassment,

personal humiliation, degradation and loss of the opportunity to engage in the ability to engage in the sporting and other activities free of abuse, mistreatment and threats related to their race and color. All of these rights are secured to Plaintiff under New York State Civil Rights Law § 40.

152.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR COUNT ELEVEN**
**Violations under New York State Executive Law - Human Rights Law § 296**
**(As against All Defendants Individually and Collectively)**

153.    The Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 152 of this Amended Complaint with the same force and effect as though fully set forth herein.

154.    The New York State Executive Law § 296 which outlaws discriminatory practices in places of public accommodation, states in relevant part:

> 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, marital status, or status as a victim of domestic violence, of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex or marital status, or

having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

155.    On February 8, 2024 during a basketball game at Locust Valley High School between Locust Valley High School Boys Basketball Team and Oyster Bay High School Boys Basketball Team, GIANNA GOTTI and KIMBERLY GOTTI engaged in inappropriate, harassing, assaultive and race based actions toward Plaintiffs    GIANNA GOTTI and KIMBERLY GOTTI along with other who joined in verbally abused children inside the gymnasium of Locust Valley High School.

156.    While this behavior by GIANNA GOTTI and KIMBERLY GOTTI engaged in improper and heinous acts, which was done with the knowledge of Defendants District and SECTION VIII included administrative, officials and supervisory personnel from the DISTRICT and SECTION VIII, none of whom took any steps or actions to intervene until staff police were called and Plaintiffs insisted that something be done.    Only then, was something done, but not by Defendants.

157.    To the contrary, with the exception of the expulsion of certain students from the premises who were the ones being abused, repercussions have not been taken to address and prevent this level of abuse and complete lack of "sportspersonship" by GIANNA GOTTI and KIMBERLY GOTTI.

158.    The racial comments and actions of GIANNA GOTTI and KIMBERLY GOTTI while in the bleachers, including those aimed at Plaintiffs where endured without any action to address their actions which were clearly race based, demeaning, degrading, and intended to intimidate and dehumanize the Plaintiffs.

159.    Not only were the actions and comments aimed at Plaintiff disregarded, but the level of intentional disrespect, intimidating, making comments intending to demean Plaintiffs on account of their race and color and otherwise physically creating fear of danger all of which was directed toward Plaintiffs because of their race and color was open and obvious.

160.    Defendants knew Plaintiffs' race and color and were aware or should have been aware of Plaintiff's intent to enter into fully participation in all aspects of the activities at the premises controlled by Defendants and to receive the equal, fair and non-discriminatory treatment and be treated equally and provided equal opportunity as Caucasian persons.

161.    Plaintiffs were denied full and equal accommodations, advantages, facilities and privileges as provided by Defendants to others other then Plaintiffs.

162.    As a consequence of Defendants' wrongful actions, callous indifference, negligent behavior and violation of state and federal laws, Plaintiffs were intimidated, abused harassed, assaulted and prevented from receiving equal accommodations as provided to Caucasian persons and was prevented from engaging in transactions and business on equal terms as Caucasian persons. Instead Plaintiffs were subjected to abuse, threats, mental anguish, great fear, embarrassment, personal humiliation, degradation and loss of the opportunity to engage in the ability to engage in the sporting and other activities free of abuse, mistreatment and threats related to their race and color. All of these rights are secured to Plaintiff under New York State Executive Law § 296.

163.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT TWELVE
## ASSAULT & BATTERY AGAINST THE GOTTI DEFENDANTS

164.     Plaintiffs repeat, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 163 of this Amended Complaint, inclusive, with the same full force and effect as if fully set forth herein.

165.     Defendants, KIMBERLY GOTTI and GIANNA GOTTI, did intend to cause reasonable fear of harmful physical contact to Plaintiffs.

166.     Plaintiffs were reasonably threatened and made to be fearful of harmful physical contact.

167.     Harmful physical contact with Plaintiffs' bodies, including, but not limited to the head and face of Crystal Etienne did occur, as did the use of physical force against the other Plaintiffs.

168.     Unwelcome harmful physical contact did occur to Jean Etienne and S.E's body.

169.     Specifically, Defendants, GIANNA GOTTI and KIMBERLY GOTTI, stuck Crystal Etienne repeatedly about her head and face.

170.     Additionally, Defendants, GIANNA GOTTI and KIMBERLY GOTTI, did forcibly remove Crystal Etienne's hair piece from her head, ripping her hair from her head causing her immense pain on and about her scalp in a physical, emotional, and racially motivated and targeted attack on her person. Plaintiff were assaulted and battered and then the Gotti Defendants boasted about their violent actions.

171.     As a result of the aforesaid defendants' actions, agreements, abusive treatment and violent behavior, Plaintiffs did suffer serious embarrassment, reputational damage, intimidation, emotional injuries, psychological distress, physical pain, pain and suffering, violation of rights and

other permanent injuries not yet fully ascertained.

172.    That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, the following relief is requested:

a.    First Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

b.    Second Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

c.    Third Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

d.    Fourth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

b.    Fifth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

e.    Sixth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

f.    Seventh Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

g.    Eighth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as

punitive damages, costs and attorney's fees.

h.  Ninth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

i.  Tenth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

j.  Eleventh Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

k.  Twelfth Count: in excess of five million ($5,000,000) dollars per plaintiff as well as punitive damages, costs and attorney's fees.

l.  Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and other fee and costs statutes;

m.  A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

n.  Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

o.  An Order granting such other legal and equitable relief as the court deems just and proper.

## PLAINTIFFS' DEMAND A TRIAL BY JURY

Dated: Hempstead, New York
      June 18, 2025

Respectfully Submitted,

THE LAW OFFICES OF
FREDERICK K. BREWINGTON

By:   *Frederick K. Brewington*

FREDERICK K. BREWINGTON
Attorneys for Plaintiffs
556 Peninsula Boulevard
Hempstead, New York 11550
(516)-489-6959